**DIVERSIFIED BENEFIT PLANS AGENCY, INC. et al., Appellees,**

v.

**DURYEE, Supt., Appellant.**

[Cite as *Diversified Benefit Plans Agency, Inc.
v. Duryee* (1995), 101 Ohio App.3d 495.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 94CA005897.

Decided March 1, 1995.

*Paul L. Jackson* and *Jeffrey J. Casto,* for appellees.

*Betty D. Montgomery,* Attorney General, and *Ava W. Serrano,* Assistant Attorney General, for appellant.

BAIRD, Judge.

Harold Duryee, Superintendent, Ohio Department of Insurance ("Superintendent"), appeals the decision of the Lorain County Common Pleas Court vacating an order issued by the Superintendent in the matters of Thomas J. Patton ("Patton") and Diversified Benefit Plans Agency, Inc. ("Diversified"). We reverse.

Patton is president of Diversified. Both Patton and Diversified are licensed by the Ohio Department of Insurance to act as insurance agents in the state of Ohio. On October 23, 1992, the Superintendent sent Patton and Diversified two Notices of Opportunity for Hearing related to Patton's and Diversified's business dealings with the county of Lorain ("county"). Patton was alleged to have misrepresented to the county the premium rate for group life insurance, misrepresented himself as "administrator" for the county, and exceeded his authority by preparing and

submitting a group life insurance application to an agency for which he was not licensed. Both Patton and Diversified were alleged to have made misrepresentations to the county with respect to conversion coverage.

## A

All charges against Patton and Diversified were consolidated, and a hearing was held before an attorney examiner at the Ohio Department of Insurance on March 9, 1993. On May 19, 1993, the examiner issued her report and recommendation, finding that:

"(1) From November 25, 1986, through at least April 6, 1988, Patton knowingly misrepresented to the County the premium rate for group life insurance provided by Medical Life Insurance Company ('Med Life'), a subsidiary of Blue Cross and Blue Shield of Ohio, Inc. Patton initially proposed coverage from Canada Life at the rate of thirty-two cents per $1,000 coverage, with such premium to include accidental death and dismemberment ('AD & D') coverage. Patton subsequently negotiated with Med Life to provide the County's coverage at a rate of twenty-four cents per $1,000 coverage, but he continued to charge the County the thirty-two cent rate and retained the difference as his fee.

"(2) Patton had, on two occasions, signed applications for insurance with Amerisure Life Insurance Company ('Amerisure') as the County's 'administrator,' thereby exceeding his authority as an insurance agent.

"(3) On November 17, 1989, Patton signed an application for new coverage for the County with AIG Life Insurance Company ('AIG') and, by doing so, exceeded his authority because he was not licensed by AIG as its agent until November 8, 1991, nearly two years later.

"(4) Both Patton and Diversified made misrepresentations to the County about conversion coverage in connection with a bid they submitted to the County in response to a request for proposal for group health insurance. The proposal quoted a rate of fifty cents per employee per month for conversion coverage and was based upon rates charged by Celtic Life Insurance ('Celtic'). In return for the monthly fee, Celtic provides employees with the right to convert to an individual policy upon a termination of group coverage. Neither Patton nor Diversified ever provided such coverage. Instead, they provided counseling services to employees for which they charged the fifty-cent rate per month."

The examiner recommended that the Superintendent issue an order revoking all insurance licenses held by Patton in the state of Ohio, ordering both Patton and Diversified to cease and desist from violating R.C. 3901.20, and ordering that they return to the county all payments received for conversion coverage, plus interest. The examiner further recommended that insurance companies and

agencies, including Diversified, be prohibited from employing Patton or permitting him to serve as a director, consultant, or in any other capacity.

On July 26, 1993, the Superintendent adopted the recommendations of the hearing examiner, except with respect to the requirement that Patton and Diversified return all payments received from the county for conversion coverage.[1]

B

Patton and Diversified appealed the Superintendent's order to the Lorain County Common Pleas Court pursuant to the procedure for administrative appeals set forth in R.C. 119.12. The court, after admitting additional evidence not before the examiner at the hearing, reversed the Superintendent's order, noting that the record demonstrated "no pattern of alleged dishonest practices, untrustworthiness, unfair or deceptive acts or practices regarding any client other than the County of Lorain." The court stated that, because only one client was complaining about Patton and Diversified, it was required to review the Superintendent's findings with particularity to determine if such findings were supported by reliable, probative and "substantive" evidence, and were in accordance with law. The court noted that "[o]rdinarily, a reviewing court may not substitute its judgment for that of the agency unless it finds that there is not a preponderance of reliable, probative and substantial evidence to support the agency's decision." The court concluded that such preponderance of evidence did not exist in the record to support the Superintendent's decision and vacated the Superintendent's order.

The court found that (1) Patton had not knowingly misrepresented to the county his receipt of eight cents of the thirty-two cents paid by the county for life insurance and AD & D coverage; (2) the county was aware of the arrangement between Patton and the insurance providers; (3) Patton complied with the terms of his competitive bid; (4) no employees were harmed by his arrangement; (5) Patton reasonably believed he had authority to sign as "administrator" of the insurance programs; (6) Patton had implied authority to submit an application to AIG without being licensed; and (7) neither Patton nor Diversified made misrepresentations to the county about conversion coverage.

---

1. The Superintendent concluded that no restitution was required, based upon representations made by Patton and Diversified, wherein they stated that an agreement was reached in the matter titled *Diversified Benefit Plans, Inc. v. Lorain Cty.*, case No. 91CV2216, in the United States District Court for the Northern District of Ohio and that such restitution was addressed in that agreement.

## C

The Superintendent appeals the common pleas court's order, asserting three assignments of error. Because two of the assignments of error raised on this appeal involve the standard of review used by the trial court and the standard of review to be used by this court, we review such standards as a preliminary matter.

■ Patton and Diversified's appeal to the Lorain County Court of Common Pleas was taken pursuant to R.C. 119.12, which governs certain appeals of agency orders, including those which revoke or suspend a party's license to engage in certain professional activities. When reviewing an order of an administrative agency, a common pleas court acts in a "limited appellate capacity." *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343, 587 N.E.2d 835, 838. In reviewing an order of an administrative agency pursuant to R.C. 119.12, the common pleas court is bound to affirm the agency's order "if it is supported by reliable, probative, and substantial evidence, and is in accordance with the law." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750. See, also, *Bottoms Up, Inc. v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 726, 728, 596 N.E.2d 475, 476. The common pleas court " 'must give due deference to the administrative resolution of evidentiary conflicts' " and therefore must not substitute its judgment for that of the administrative agency. *Hawkins v. Marion Corr. Inst.* (1990), 62 Ohio App.3d 863, 870, 577 N.E.2d 720, 724, quoting *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267.

■ An appellate court's review of the trial court's decision is even more limited and requires the appellate court "to determine only if the trial court has abused its discretion, *i.e.,* being not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency." *Pons,* 66 Ohio St.3d at 621, 614 N.E.2d at 750–751. Where the common pleas court applies a standard of review greater than that called for in R.C. 119.12, the trial court has abused its discretion. *Bottoms Up, Inc.,* 72 Ohio App.3d at 729–730, 596 N.E.2d at 476–477.

## D

■ In his first and third assignments of error, the Superintendent asserts that the lower court abused its discretion and erred as a matter of law by (1) construing R.C. 3901.20 to require a widespread pattern of unfair and deceptive practices involving more than just one client before the Superintendent can take action for violation of the statute; and (2) failing to uphold the order of the

Superintendent when such order was supported by reliable, probative, and substantial evidence and was in accordance with law.

### 1

R.C. 3901.20 states, "No person shall engage in this state in *any* trade practice which is defined in sections 3901.19 to 3901.23 of the Revised Code as, or determined pursuant to those sections to be, an unfair or deceptive act or practice in the business of insurance." (Emphasis added.) In its order, the common pleas court stated:

"I first note that while the Superintendent would impose a professional 'death sentence' upon Patton and de facto divorce him from his company, Diversified, there is no pattern of alleged dishonest practices, untrustworthiness, unfair or deceptive acts or practices regarding any client other than the County of Lorain. Prior to a permanent revocation of a professional license I would expect to see a widespread pattern of wrongdoing involving more than just one client."

The court cites no authority for its position, nor have we found any. The statute clearly prohibits "any" unfair trade practice. Adopting the common pleas court's interpretation of R.C. 3901.20 effectively would permit at least one "free" unfair or deceptive trade practice per agent and multiple unfair trade practices when such practices are suffered by only one client. The court clearly required a greater degree of mischief for a violation of R.C. 3901.20 than the plain language of the statute sets forth. Accordingly, the Superintendent's first assignment of error is sustained.

### 2

With regard to the Superintendent's third assignment of error arguing that the court should have upheld its order, the common pleas court is permitted to reverse, vacate, or modify an order pursuant to R.C. 119.12 only if it finds that such order is not supported by reliable, probative, and substantial evidence, or is not in accordance with law. *Pons,* 66 Ohio St.3d at 621, 614 N.E.2d at 750–751. Although the court's order in the case *sub judice* cites that standard of review, it goes on to state that a reviewing court may substitute its judgment for that of the agency if it finds that the order is not supported by a preponderance of evidence (citing *Dudukovich v. Lorain Metro. Hous. Auth.* [1978], 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 201–202, 389 N.E.2d 1113, 1116–1117). The court concluded that the Superintendent's order was not supported by a preponderance of the evidence.

*Dudukovich* involved an appeal brought pursuant to R.C. Chapter 2505. In its decision, the *Dudukovich* court noted that, in actions brought pursuant to R.C. Chapter 2505, R.C. 2506.04 permits the court to vacate an administrative order if

it is not supported by a "preponderance" of evidence. 58 Ohio St.2d at 206, 12 O.O.3d at 201, 389 N.E.2d at 1116. "Preponderance of evidence" is defined as "evidence which is of greater weight or more convincing than evidence which is offered in opposition to it * * *." *Matchmaker Internatl., Inc. v. Long* (Jan. 25, 1995), Summit App. No. 16784, unreported, at 4, 1995 WL 28988.

█ The preponderance of the evidence standard set forth in R.C. 2506.04 is inapplicable to a common pleas court's review of an administrative order pursuant to R.C. 119.12, because R.C. 119.12 sets forth its own standard of review. As such, that standard is to be applied rather than the more general standard set forth in R.C. 2506.04. See R.C. 1.12.

Accordingly, the trial court erred in applying the wrong standard of review. To that extent, the Superintendent's third assignment of error is sustained. This court declines to reach the remainder of the third assignment of error.

3

█ In its second assignment of error, the Superintendent argues that the common pleas court abused its discretion and erred as a matter of law by admitting additional evidence into the record when such evidence did not meet the criteria for being newly discovered.

On October 22, 1993, Patton and Diversified moved the common pleas court to supplement the record for review with three items: (1) a deposition of the county's administrator taken after the Superintendent's final ruling with respect to a controversy between the county and Patton to which the Superintendent was not a party; (2) a summary of other actions taken by the Superintendent with respect to agents since 1990; and (3) an affidavit from the officer of a company not a party to this action discussing a situation involving another insurance agent who was found guilty of taking money from the company. The common pleas court admitted the evidence, without explanation, over the Superintendent's objections.

R.C. 119.12 provides:

"Unless otherwise provided by law, in the hearing of the appeal, the court is confined to the record as certified to it by the agency. Unless otherwise provided by law, the court may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency."

"Newly discovered evidence refers to evidence that was in existence at the time of the administrative hearing but which was incapable of discovery by due diligence; however, newly discovered evidence does not refer to newly created

evidence." *Steckler v. Ohio State Bd. of Psychology* (1992), 83 Ohio App.3d 33, 38, 613 N.E.2d 1070, 1074. In interpreting Civ.R. 60(B)(2), which is analogous to R.C. 119.12 as it pertains to newly discovered evidence, this court has held that the moving party has the burden of demonstrating:

"(1) that the evidence was actually 'newly discovered'; that is, it must have been discovered subsequent to the trial;

"(2) that the movant exercised due diligence; and

"(3) that the evidence is material, not merely impeaching or cumulative, and that a new trial would probably produce a different result." (Citations omitted.) *Holden v. Ohio Bur. of Motor Vehicles* (1990), 67 Ohio App.3d 531, 540, 587 N.E.2d 880, 885.

Patton and Diversified's hearing before the Department of Insurance was held on March 9, 1993. The deposition at issue was taken on August 30, 1993, in a civil action between Diversified and the county. (See fn. 1.) The Superintendent was not a party to such action.

■ It is widely accepted that in order for a deposition to be admissible into evidence, the party against whom the deposition is offered must have had an opportunity to cross-examine the deponent. Annotation, Depositions—Admission in Evidence (1965), 4 A.L.R.3d 1075, 1079. See, also, *Ryan v. O'Connor* (1884), 41 Ohio St. 368, 372. Because the Superintendent was not permitted to cross-examine the deponent, his deposition should not have been admitted into evidence. Moreover, in offering the deposition into evidence, Patton argued that the deposition testimony indicates that the deponent's testimony before the administrative hearing examiner "was in no way reliable or probative and should in no way be relied upon" by the common pleas court in its review. Under the third prong of the *Holden* test, even if the deposition were otherwise admissible, Patton's proffer of the evidence for impeachment purposes failed to state a valid ground for its admission as newly acquired evidence.

The affidavit admitted by the court was executed on October 13, 1993, and sets forth facts relative to the investigation of another entity's insurance agent. Neither the deposition nor Patton's brief states when these events occurred. The report at issue covers sanctions ordered by the Superintendent between 1990 and 1993. In his brief in support of admission of the report, Patton alleged that this evidence only "came to light" as the result of discussions with the Department of Insurance after the hearing. He argued that this material should be admitted because he never expected, prior to the report and recommendation of the hearing examiner, that his punishment would be so far outside the norm.

Even assuming that the facts set forth in the affidavit occurred before Patton's hearing, Patton did not argue in his brief that the information in the affidavit or

in the report was not discoverable before the hearing. He made no argument that he used reasonable diligence to obtain this evidence at the time of the hearing as required by R.C. 119.12. In fact, he made no argument that he used any diligence at all. Therefore, the evidence should not have been admitted by the common pleas court.

Accordingly, the Superintendent's second assignment of error is sustained.

## E

Pursuant to R.C. 119.12, this court's review of the common pleas court's judgment is to be conducted, as in the case of appeals in civil actions, pursuant to the Ohio Rules of Appellate Procedure "and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code." App.R. 12 and R.C. 2505.39 permit this court to reverse the common pleas court's decision and remand to that court for proceedings consistent with this opinion. See, *e.g.*, *Hall v. Bd. of Landscape Architect Exam.* (1993), 91 Ohio App.3d 401, 403, 632 N.E.2d 954, 955.

Because the common pleas court wrongly construed the law set forth in R.C. 3901.20, did not apply the proper standard of administrative review set forth in R.C. 119.12, and admitted new evidence that was inadmissible pursuant to R.C. 119.12, its judgment is reversed and the cause remanded for further consideration in accordance with the proper standard of review.

*Judgment reversed*
*and cause remanded.*

DICKINSON, J., concurs.

QUILLIN, P.J., dissents.

QUILLIN, Presiding Judge, dissenting.

I believe we should address all of appellant's third assignment of error, which states:

"The lower court abused its discretion by failing to uphold the order of the superintendent of insurance because such order is supported by reliable, probative, and substantial evidence and is in accordance with law."